http://www.va.gov/vetapp16/Files4/1634350.txt

Citation Nr: 1634350 
Decision Date: 08/31/16 Archive Date: 09/06/16

DOCKET NO. 11-11 940 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Winston-Salem, North Carolina

THE ISSUES

1. Entitlement to an initial compensable evaluation for status post right finger fracture.

2. Entitlement to a total disability rating based on individual unemployability due to service-connected disabilities (TDIU).

REPRESENTATION

Veteran represented by: North Carolina Division of Veterans Affairs

WITNESSES AT HEARING ON APPEAL

The Veteran; his spouse

ATTORNEY FOR THE BOARD

Steven D. Najarian, Associate Counsel

INTRODUCTION

The Veteran had active service in the U.S. Army from June 2000 to June 2004.

This matter comes before the Board of Veterans' Appeals (Board) from a September 2010 rating decision of the Department of Veterans Affairs (VA) Regional Office (RO) in Winston-Salem, North Carolina.

In July 2014, the Veteran testified at a Travel Board hearing before the undersigned Veterans Law Judge. A transcript of the hearing has been associated with the claims folder.

In September 2014, the Board remanded the Veteran's case for further evidentiary development.

The Veteran's record before the VA consists of an electronic record located in Virtual VA and the Veterans Benefits Management System (VBMS).

The appeal is REMANDED to the Agency of Original Jurisdiction (AOJ). VA will notify the appellant if further action is required.

REMAND

A rating decision of September 2010 granted the Veteran service connection for status post right ring finger facture, with an evaluation of zero percent and an effective date of February 22, 2010. The Veteran has appealed the assigned rating, specifically arguing that his disability is not of the right ring finger but rather of his right hand, and that it is characterized by "pain and constant cramping," "nerve damage," and "a numb feeling in my fingertips." See notice of disagreement of October 2011. 

A remand by the Board confers on an appellant, as a matter of law, the right to compliance with the remand order. See Stegall v. West, 11 Vet. App. 268 (1998). If the Board proceeds with final disposition of an appeal, and the remand order has not been complied with, the Board errs in failing to ensure compliance. Id. at 271. The Board will remand for an additional VA medical examination of the Veteran's right hand because the Board's remand instructions of September 2014 have not been fully complied with.

The Board's remand order of September 2014 specifically called for the Veteran to be scheduled for "an appropriate VA examination(s) with a physician." (emphasis added). The December 2015 VA examiner was a physician's assistant, not a physician.

Furthermore, the Board directed the VA examiner "to determine the nature and severity of the service-connected right hand/finger disability, to include both orthopedic and neurological manifestations." (emphasis added). While the October 2015 examiner noted the Veteran's report of pain, "pins and needles," and other symptoms, neurological manifestations were not evaluated in the report. The examiner stated: "This examiner attempted to get nerve conduction velocity testing to determine if current symptoms are related to carpal tunnel syndrome or the residuals of the 4th metacarpal fracture, however the test has been postponed until January, 2016. This report is submitted without means to differentiate signs and symptoms reported above." The record does not contain a supplemental VA medical report relating to the neurological evaluation postponed by the October 2015 VA examiner.

The Board notes that a VA "physical medicine rehab consult" of March 2016 documents neurological testing of the right hand and an impression of "1. Abnormal electrodiagnostic study; 2. Electrodiagnostic evidence of mild right median neuropathy at the wrist demyelinating in nature consistent with carpal tunnel syndrome; 3. No electrodiagnostic evidence of peripheral polyneuropathy." However, the Board does not consider the March 2016 rehab consult, which was performed in the context of treatment, to meet the Board's remand directive for a determination of the neurological manifestations of the Veteran's service-connected disability in the context of a claim for a rating increase.

The Board also finds the October 2015 VA examination report to be inadequate with respect to scars. The examiner responded "yes" to the form questions, "Does the Veteran have any scars (surgical or otherwise) related to any conditions or to the treatment of any conditions listed in the Diagnosis section above?" and "If yes, are any of the scars painful or unstable; have a total area equal to or greater than 39 square cm (6 square inches); or are located on the head, face or neck?" No response was given, however, in the comment section corresponding to those questions. The examiner did not specify the number and location of the scars. Nor were the scars associated with a specific diagnosis, as the Diagnosis section of the disability benefits questionnaire was left blank. Accordingly, the Board does not have sufficient information to determine whether or not the Veteran may be entitled to a separate rating for scars associated with his service-connected finger/hand disability.

Two or more issues are inextricably intertwined if one claim could have significant impact on the other. See Harris v. Derwinski, 1 Vet. App. 180, 183 (1991). Here the Veteran's claim of entitlement to TDIU is inextricably intertwined with his claim of entitlement to an initial compensable evaluation for status post right finger fracture. Development of the Veteran's claim for an increased disability rating may impact his claim for TDIU.

Accordingly, the case is REMANDED for the following action:

1. Obtain any VA treatment records of the Veteran dated since March 2016.

2. Schedule the Veteran for a VA neurological examination with a medical doctor to determine the severity of his service-connected disability of the right hand (including his fingers). The examiner should review the Veteran's claims folder in Virtual VA and VBMS.

Following an examination and interview of the Veteran, the examiner should identify all current disabilities of the right hand (including the fingers) and the right wrist. In so doing, the examiner should indicate whether there is injury to any muscle group or groups.

The examiner should also indicate whether there is any neurological impairment and, if so, whether such impairment relates to the Veteran's in-service "midshaft fracture of the right fourth metacarpal." (VBMS, document labeled "Medical Treatment Record - Non-Governmental Facility," receipt date 5/13/2010, p. 1). Any identified neurological impairment should be characterized as mild, moderate or severe incomplete paralysis.

The examiner should specifically address the nature and extent of any limitation of motion, functional loss associated with pain, weakened movement, excess fatigability, swelling, deformity, or atrophy of disuse. In addition, the examiner should inquire as to whether the Veteran experiences flare-ups associated with a right hand/finger(s)/wrist disability. To the extent possible, any additional functional loss or limitation of motion attributable to such flare-ups should be described.

The examiner should also indicate whether the Veteran has "carpal tunnel syndrome" and, if so, whether any symptoms of the right hand/right fingers/right wrist are due to carpal tunnel syndrome, and whether it is at least as likely as not that the Veteran's carpal tunnel syndrome is related to the Veteran's service-connected disability due to the 2001 in-service injury to his right hand. Attention is invited to the electrodiagnostic evidence dated in March 2016. (Virtual VA, document labeled CAPRI, receipt date 3/24/2016, page 1).

The examiner should also describe whether any residual scar is painful or unstable, the location and size of the scar/s, and whether the characteristics of disfigurement are present.

The examiner is asked to explain the reasons behind any opinions expressed and conclusions reached.

3. Thereafter, readjudicate the Veteran's claims, to include his claim of entitlement to TDIU, giving specific consideration to whether the Veteran would be more appropriately rated under a diagnostic code for neurological manifestations of a right hand disability. If the decision remains adverse to the Veteran, he and his representative should be furnished a supplemental statement of the case and afforded the requisite period of time within which to respond.

The appellant has the right to submit additional evidence and argument on the matters the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999).

This claim must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board of Veterans' Appeals or by the United States Court of Appeals for Veterans Claims for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C.A. §§ 5109B, 7112 (West 2014).

_________________________________________________
Bethany L. Buck
Veterans Law Judge, Board of Veterans' Appeals

Under 38 U.S.C.A. § 7252 (West 2014), only a decision of the Board of Veterans' Appeals is appealable to the United States Court of Appeals for Veterans Claims. This remand is in the nature of a preliminary order and does not constitute a decision of the Board on the merits of your appeal. 38 C.F.R. § 20.1100(b) (2015).